UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KYLE BODDY, et al.,

          Plaintiffs,

    v.

BRENT POURCIAU, et al.,

          Defendants.

CASE NO. C18-1046JLR

ORDER DENYING MOTION TO DISMISS OR TRANSFER AND GRANTING JURISDICTIONAL DISCOVERY

## I.   INTRODUCTION

Before the court is Defendants Brent Pourciau and Top Velocity, LLC's ("Top Velocity") (collectively, "Defendants") motion to dismiss or, in the alternative, transfer. (Mot. (Dkt. # 8).)  Plaintiffs Kyle Boddy and Driveline Baseball Enterprises, LLC ("Driveline") (collectively, "Plaintiffs") filed a response.  (Resp. (Dkt. # 17).)  As part of Plaintiffs' response, Plaintiffs request jurisdictional discovery if the court does not have sufficient facts to determine personal jurisdiction at this time.  (*See id.* at 5 n.15.)  Defendants did not file a reply.  (*See generally* Dkt.)  The court has considered the

parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court concludes that additional information would be helpful to resolving the issue of personal jurisdiction. The court GRANTS Plaintiffs' request for jurisdictional discovery as specified herein and DENIES without prejudice to refiling, if appropriate, Defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer pending the conclusion of jurisdictional discovery. The court also DENIES Defendants' motion to dismiss based on improper venue.

## II. BACKGROUND

### A. Parties

Driveline is a Washington limited liability company that "provides hitting and pitching training to amateur and professional baseball players, and produces, markets, and sells related baseball training equipment and training programs." (SAC (Dkt. # 10) ¶ 2.)[2] Driveline coaches players from a variety of levels at its training facility in Kent, Washington. (*Id.*) In addition, Driveline works with high schools, colleges, and professional teams across the country. (*Id.*) Driveline also ships training products to customers, including customers in Louisiana. (*See* Rathwell Decl. (Dkt. # 18) ¶ 4.)

---

[1] The parties do not request oral argument on the motion (*see* Mot. at 1; Resp. at 1), and the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Although Plaintiffs' second amended complaint (Dkt. # 10) was filed after Defendants' motion (Dkt. # 8), the court previously determined that the motion applies to the second amended complaint (*see* Order (Dkt. # 16) at 2-3).

Driveline's 26 employees are all located in Kent, Washington, as are Driveline's warehouse, corporate offices, and many of Driveline's clients. (*See id.* ¶¶ 2, 4, 9.)

Mr. Boddy is a resident of King County, Washington. (SAC ¶ 1.) He is the founder and co-owner of a baseball performance training system that is used at Driveline, "which uses a data-driven approach to improve baseball performance for pitchers and hitters and improve conditioning." (*Id.*) Mr. Boddy is currently the Director of Research and Development at Driveline. (*Id.*)

Mr. Pourciau is a resident of St. Tammany Parish, Louisiana, and is the owner, manager, officer, and sole member of Top Velocity. (*Id.* ¶ 3; Supp. Not. of Rem. (Dkt. # 13) at 3.) Top Velocity is a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana. (SAC ¶¶ 3-4; Supp. Not. of Rem. at 3.) Top Velocity markets and sells baseball training programs on its website that are designed to enhance pitching performance and speed. (SAC ¶ 4.) Top Velocity also promotes its services and products on social media, such as YouTube, Twitter, and Facebook. (*Id.*)

Mr. Pourciau has an affiliate relationship with Big League Edge, which is another baseball training facility in Kent, Washington. (Resp. at 5.) Mr. Pourciau recently visited Washington to provide clinics and conduct business that is related to this affiliate relationship. (*Id.*) Due to these contacts with Washington, as well as Driveline's and Top Velocity's national reach, Plaintiffs argue that the parties are competitors in the baseball training industry. (*Id.* at 1-2.)

//

**B.     Statements at Issue**

On or about November 8, 2017, Mr. Pourciau created the Twitter user account @crh81497267, that was entitled "Chris C." (SAC ¶ 11.)  It was unknown at that time that Mr. Pourciau controlled the Chris C account. (*Id.* ¶ 20.)  That evening, Mr. Pourciau "tweeted" from the Chris C account that "there is a lot you guys don't know about DL [Driveline] that needs to be exposed." (*Id.* ¶ 12.)  Included in the tweet were alleged screenshots of text message conversations, one of which involved Mr. Boddy encouraging a client to take performance enhancing drugs ("PEDs") and portraying that Driveline regularly gave its clients PEDs. (*Id.*)  Mr. Pourciau's original tweet from the Chris C account was directed at 10 Twitter users. (*See* SAC, Ex. A (Dkt. # 10-1) ("Replying to @JasonOchart @Parqman40 and 3 others," and sent to "@TCDriller99 @tscho341 @clongbaseball @brett_lawrence @ian_walsh11").)  Like all of the tweets discussed below, this tweet was posted publicly and was accessible to all Twitter users. (*See* SAC ¶ 13.)

Fifteen minutes later, Mr. Pourciau used his @TopVelocity Twitter account to reply to Chris C's tweet, and said, "[w]ow is this real?" (*Id.* ¶ 14, Ex. B (Dkt. # 10-2) at 2.)  Mr. Pourciau's reply was directed at nine specific Twitter users. (*See id.* ("Reply to @CoachKsAcademy @crh81497267 and 7 others").)  On November 28, 2017, Mr. Pourciau again replied to the original Chris C tweet, this time providing a link to the screenshots and saying, "I am blown about by the sh[**] that comes from DL.  Coaches that blantanly [sic] lie about WB studies and recent rumor of PED." (*Id.* at 3.)  The November 28, tweet was sent as a reply to @coach_aubin17 and @Hooker1993. (*Id.*)

On November 29, 2017, Driveline's CEO, Michael Rathwell, emailed Mr.
Pourciau in part to inform him that the steroid allegation posted on the Chris C Twitter
account was false, and the text message screenshots were "clearly forged." (SAC ¶ 18,
Ex. E (Dkt. # 10-5) at 2.) Later that day, Mr. Pourciau responded, "[t]his new rumor of
PED use is just the icing on the cake and I have no idea if it is true and I don't care."
(*Id.*) On November 30, Mr. Rathwell responded, "I am in receipt of this email. To
reiterate, the allegation of steroid use is not true. I understand from your email that you
do not care about the truthfulness of the claim despite obvious errors." (*Id.* at 3.) Mr.
Pourciau did not respond. (*See id.*)

About one week later, on December 8, 2017, Mr. Pourciau again posted the text
message screenshots from the Chris C Twitter account, this time with the caption: "How
does this fall into the DL products and services?" (SAC ¶ 15, Ex. C (Dkt. # 10-3) at 2.)
This tweet was sent as a reply to @DrivelineBB and @TopVelocity. (*Id.*) That same
day, Mr. Pourciau replied to three Twitter users (@90degreeEngle, @Clant1015, and
@JackRoes) by retweeting Chris C's original tweet, and saying, "[w]ell sense [sic] you
are so informed about DL. Is this true?" (SAC ¶ 16, Ex. D (Dkt. # 10-4) at 2.)

## C.     Investigation

Because of the harmful nature of the Chris C tweets that associated Driveline with
PED use, on November 9, 2017, one day after the original tweet, Driveline initiated the
present lawsuit in Washington State Superior Court for King County, alleging a cause of
action for libel. (SAC ¶ 20; *see also* Compl. (Dkt. # 8-1) at 4.) Driveline initially

//

brought suit against John Doe defendants with the intention of amending the complaint as soon as it discovered who was responsible. (SAC ¶ 20; Compl. at 1.)

On November 10, 2017, Plaintiffs served a subpoena on Twitter, Inc., in order to gain information about the Chris C account. (SAC ¶ 21.) Twitter's subpoena response revealed that the Chris C account was created with the email address chris@chriscretinconstruction.com. (*Id.*) Plaintiffs then discovered that the domain name chriscretinconstruction.com is registered to Mr. Pourciau, and Chris Cretin is a former business associate of Mr. Pourciau. (*Id.* ¶¶ 21-22, Ex. G (Dkt. # 10-7) at 2-5.) Twitter also provided Plaintiffs with the Internet Protocol ("IP") addresses that were used to access the Chris C account. (SAC ¶ 21.) Using the IP addresses, Plaintiffs were able to determine that Mr. Pourciau registered the Chris C account from his home in Louisiana. (*Id.* ¶¶ 24-26, Ex. H (Dkt. # 10-8) at 3.)

Plaintiffs therefore amended their state court complaint on June 20, 2018, to identify Mr. Pourciau and Mr. Cretin as defendants, as well as add a claim for unfair competition. (SAC ¶ 27; *see also* FAC (Dkt. # 1-1) at 1, 4, 12.) After receiving the amended complaint, Mr. Cretin contacted Plaintiffs' counsel and explained that he had no personal knowledge of Driveline or Mr. Boddy. (SAC ¶ 27.) Mr. Cretin also said that Mr. Pourciau had recently contacted him to explain that Mr. Pourciau had used Mr. Cretin's old email address to register the Chris C Twitter account. (*Id.*) Mr. Pourciau admitted to Mr. Cretin that he used the Chris C account to post statements about Driveline and Mr. Boddy. (*Id.*) Mr. Cretin told Plaintiffs' counsel that Mr. Pourciau took

//

1  these actions without Mr. Cretin's knowledge or consent.  (*Id.* ¶¶ 27-28, Ex. I (Dkt.

2  # 10-9) at 2-4.)

3  **D.    Present Motion**

4          Defendants removed this matter to this court on July 17, 2018.  (*See* Not. of Rem.

5  (Dkt. # 1).)  After removal, Plaintiffs amended their complaint to include a claim for false

6  light.  (*See* SAC ¶¶ 36-40.)  Defendants now move to dismiss this case for lack of

7  personal jurisdiction and improper venue.  (Mot. at 1-4.)  In the alternative, Defendants

8  ask the court to transfer this case to the United States District Court for the Eastern

9  District of Louisiana, where Defendants are located.  (*Id.* at 4-5.)  In response, Plaintiffs

10  request an opportunity to conduct jurisdictional discovery if the court does not have

11  sufficient facts to determine personal jurisdiction at this time.  (Resp. at 5 n.15.)  The

12  court addresses these issues in turn.

13                      **III.    ANALYSIS**

14  **A.    Standard**

15          When a defendant brings a motion to dismiss pursuant to Federal Rule of Civil

16  Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.

17  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

18  Where a district court decides such a motion without an evidentiary hearing, "the plaintiff

19  need only make a prima facie showing of the jurisdictional facts."  *Boschetto v. Hansing*,

20  539 F.3d 1011, 1015 (9th Cir. 2008).  Uncontroverted allegations in the complaint are

21  taken as true, and any factual dispute contained in affidavits and declarations are resolved

22  in the plaintiff's favor.  *Id.*  The court, however, may not "assume the truth of allegations

1    in a pleading which are contradicted by affidavit." *Mavrix*, 647 F.3d at 1223 (citation

2    omitted).

3    **B.**    **Personal Jurisdiction**

4       "Federal courts apply state law to determine the bounds of their jurisdiction over a

5    party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed.

6    R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends

7    jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 783 P.2d

8    78, 82 (Wash. 1989). The due process clause grants the court jurisdiction over

9    defendants who have "certain minimum contacts . . . such that maintenance of the suit

10    does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.*

11    *Washington*, 326 U.S. 310, 316 (1945).

12       Personal jurisdiction can be based on either general jurisdiction or specific

13    jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th

14    Cir. 2000). Here, Plaintiffs do not allege that Defendants are subject to general

15    jurisdiction.[3] (*See* Resp. at 4-5, 5 n.15.) Thus, only specific jurisdiction is at issue.

16       "The inquiry whether a forum State may assert specific jurisdiction over a

17    nonresident defendant 'focuses on the relationship among the defendant, the forum, and

18    the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir.

19

20          [3] Plaintiffs note that Top Velocity has an affiliate relationship with another baseball
training facility in Kent, Washington, and that Mr. Pourciau has recently visited Washington to

21    provide clinics and conduct business. (Resp. at 5.) Plaintiffs aver that these facts alone are not
enough to provide general jurisdiction. (*Id.*) The court agrees that, as currently pleaded,

22    Defendants do not have Washington contacts "of the sort that approximate physical presence,"
which is necessary for general jurisdiction. *Bancroft*, 223 F.3d at 1086 (citation omitted).

2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)).  Two principles guide this inquiry:  First, this relationship must arise from contacts that the "defendant *himself*" creates with the forum state.  *Walden*, 571 U.S. 284 (emphasis in original).  In other words, plaintiffs' or third parties' contacts with the forum state cannot be the basis for jurisdiction over the defendant.  *Id.*  This is because due process in this context "principally protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."  *Id.*  Second, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* at 285.  Put simply, "the plaintiff cannot be the only link between the defendant and the forum."  *Id.*  Moreover, "random, fortuitous, or attenuated" contacts with a forum state are insufficient for specific jurisdiction.  *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:  (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum; (2) the claims arise out of the defendant's forum-related activities; and (3) exercise of jurisdiction is reasonable.  *Axiom*, 874 F.3d at 1068.  Plaintiffs bear the burden of satisfying the first two prongs.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The burden then shifts to defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable.  *Id.*

//

1    Where, as here, the case sounds in tort, the court considers for part one of the

2 above-stated test whether the defendant has purposefully directed his activities at the

3 forum state, even if the acts took place elsewhere.[4] *Axiom*, 874 F.3d at 1069.  To meet

4 this threshold, the defendant must have "(1) committed an intentional act, (2) expressly

5 aimed at the forum state, (3) causing harm that the defendant knows is likely to be

6 suffered in the forum state." *Mavrix*, 647 F.3d at 1228.

7    Plaintiffs have alleged that Defendants committed an intentional act by publishing

8 false statements on the internet with the intention of harming Plaintiffs.  (*See* SAC

9 ¶¶ 29-45.)  Thus, the first prong of the test is met.  *See Axiom*, 874 F.3d at 1069 (finding

10 that adding a logo to a newsletter and sending the newsletter to recipients was

11 "unquestionably an intentional act").

12    The heart of the analysis lies with prong two and whether Defendants expressly

13 aimed their conduct at Washington.  "The exact form of our analysis varies from case to

14 case and 'depends, to a significant degree, on the specific type of tort or other wrongful

15 conduct at issue.'"  *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 807).

16 In this case, Plaintiffs claim libel, false light, and unfair competition, all of which arise

17 out of Defendants' tweets.  The court therefore asks whether Defendants aimed these

18 allegedly tortious tweets at the state of Washington.  *See Picot*, 780 F.3d at 1214.

19 //

20 _____

21    [4] A plaintiff relying on specific jurisdiction "must establish that jurisdiction is proper for 'each claim asserted against a defendant.'"  *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).  Because all of Plaintiffs'

22 claims sound in tort and rely on a "common nucleus of operative facts," the court's following analysis applies to all of Plaintiffs' claims.  *See id.*

1    Plaintiffs argue that the express aiming requirement is met because Defendants

2    directed the statements toward Plaintiffs—a Washington resident and company—when

3    they published the statements on Twitter. (Resp. at 5.) Plaintiffs also claim that the

4    tweets were published in Washington via Twitter and were directed at Washington

5    residents. (*Id.* at 5, 7.) Moreover, Defendants were aware that the harm suffered by

6    Plaintiffs would occur in Washington. (*Id.* at 7.) This is especially so, Plaintiffs allege,

7    because Mr. Pourciau traveled to Washington to give lectures and work with Driveline's

8    competitors. (*Id.*) The court finds that Plaintiffs have not provided sufficient facts to

9    establish Defendants' personal jurisdiction in this forum.

10    To the extent that Plaintiffs' focus on their own connections with Washington,

11    Plaintiffs are misguided. Again, as clarified in *Walden*, the personal jurisdiction inquiry

12    does not center on Plaintiffs' contacts with the forum state. *Walden*, 571 U.S. at 284-85

13    ("Put simply, however significant the plaintiff's contacts with the forum may be, those

14    contacts cannot be decisive in determining whether the defendant's due process rights are

15    violated." (internal citation omitted)). Rather, Defendants' conduct must connect them to

16    the forum—not just to Plaintiffs—in a substantial and meaningful way, and Defendants'

17    relationship with Plaintiffs cannot alone serve as the basis for specific personal

18    jurisdiction. *See id.* at 284-86.

19    In addition, the court does not agree that Defendants "published" the tweets in

20    Washington. Rather, the Defendants published the tweets on the internet, from devices

21    located in Louisiana. (*See* SAC ¶ 26.) To hold that Defendants are subject to this court's

22    jurisdiction simply because the tweets were viewable in Washington would open

Defendants to being haled into every court in the country. This would violate *Walden*'s directive that a "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The court recognizes that the internet has blurred the specific personal jurisdiction analysis, but the central question remains at this stage whether Defendants "expressly aimed" their tweets at Washington. Internet postings that randomly or fortuitously make their way into Washington are insufficient for specific jurisdiction. *See Burger King*, 471 U.S. at 475.

That said, because Plaintiffs have alleged libel, Defendants' intended audience and the place of Plaintiffs' reputation play a role in the jurisdiction analysis. *See Walden*, 571 U.S. at 287-88 (distinguishing between a plaintiff's residence and where a plaintiff's reputation is harmed). For example, in *Calder v. Jones*, a California actress brought suit against two nonresident defendants in a California court based on an article that the defendants wrote in the National Enquirer. 465 U.S. at 784-86. At the time, the National Enquirer sold about 600,000 copies in California, which was almost twice the level of the next highest state. *Id.* at 785. The Supreme Court held that it had personal jurisdiction over these nonresident defendants. *Id.* at 791. The Court in *Walden* clarified *Calder*'s finding of personal jurisdiction:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element

of libel, the defendants' intentional tort actually occurred *in* [C]alifornia. In this way, the "effects" caused by the defendants' article—*i.e.,* the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California,* not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden,* 571 U.S. at 287-88 (internal citations omitted) (emphasis in original).

In this case, Plaintiffs have not shown that Washington is the "focal point of the . . . harm suffered" to their reputation. *Walden,* 571 U.S. at 287 (quoting *Calder,* 465 U.S. at 789). To the contrary, Driveline performs business across the country, including in Louisiana. (*See* Rathwell Decl. ¶ 4.) Thus, to the extent Plaintiffs have alleged anything about their reputations, it appears that they extend beyond Washington. (*See* SAC ¶ 17 (not specifying where Plaintiffs' reputations will be harmed).) The national scope of both Plaintiffs' and Defendants' business also undermines Plaintiffs' contention that Defendants sent the tweets to gain a competitive edge in the Washington market. (*See* Resp. at 1-2, 7.) Rather, the parties' competition appears to extend nationwide, without a focus on a particular forum.

In addition, Plaintiffs claim that Defendants' statements were purposefully directed to Washington readers, but Plaintiffs provide no support for that assertion. (*See* Resp. at 5; *see also* SAC ¶ 17.) Plaintiffs cannot "simply rest on the bare allegations of [their] complaint, but rather [are] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). Courts in the Ninth Circuit have explained that, when analyzing personal jurisdiction over a defendant in a case involving social media posts,

the plaintiff should provide the residence of the posts' audience. *See, e.g., Sec. Alarm Fin. Enter., L.P. v. Nebel*, 200 F. Supp. 3d 976, 985 (N.D. Cal. 2016) (finding that social media posts are insufficient to establish personal jurisdiction because the plaintiff "offered no evidence, and the Court finds none, that [the defendant's] Facebook and Instagram posts were in any way directed or targeted at California or a California audience."); *McGibney v. Retzlaff*, No. 14-cv-01059-BLF, 2015 WL 3807671, at *5 (N.D. Cal. June 18, 2015) (explaining that "more direct virtual contacts present a closer question on personal jurisdiction"). Here, Plaintiffs' produced pictures of the disputed tweets, which show some of the Twitter users that Mr. Pourciau directed his comments toward. It could be argued that Defendants "expressly aimed" their tweets at these Twitter users. But Plaintiffs did not provide any information about the tweets' audience. For example, Mr. Pourciau sent his original reply tweet to "@CoachKsAcademy @crh81497267 and 7 others." (SAC, Ex. B at 2.) The court does not know the residence or identity of @CoachKsAcademy, let alone the "7 others," or if the tweets were in some way tailored for a Washington audience. Plaintiffs failed to provide these facts. (*See generally* SAC; Resp.)

The court notes that simply showing that some members of the tweets' audience are connected to Washington may not be enough to establish specific personal jurisdiction. Rather, Plaintiffs must show that the tweets' audience, combined with other case-related facts, reveals that Defendants expressly aimed their tweets at Washington. For example, in *Axiom Foods, Inc. v. Acerchem International, Inc.*, California and Arizona plaintiffs filed suit against a foreign defendant. 874 F.3d at 1066-67. The

1  parties were competitors in the field of health and food products. *Id.* at 1067. The

2  defendant sent a newsletter to 343 email addresses that contained the plaintiffs' logos. *Id.*

3  Most of the recipients were located in Western Europe, but the plaintiffs were able to

4  show that around ten recipients were located in California. *Id.* The plaintiffs filed suit in

5  the Northern District of California alleging copyright infringement. *Id.* In upholding the

6  district court's finding that it did not have personal jurisdiction over the defendant, the

7  Ninth Circuit explained that because the vast majority of the newsletter recipients were

8  not in California, "[i]t can hardly be said that 'California [wa]s the focal point both of the

9  [newsletter] and of the harm suffered.'" *Id.* at 1070 (quoting *Walden*, 571 U.S. at 287)

10  (alterations in original).

11        In short, without knowing the residence of Defendants' targeted audience, or the

12  central location of Plaintiffs' reputation, the court cannot find that Washington was the

13  "focal point" of the tweet and of the harm suffered. More broadly, on the facts pleaded,

14  Plaintiffs have not shown that Defendants purposefully directed their activities toward

15  Washington. Accordingly, the court finds that Plaintiffs have thus far failed to

16  demonstrate personal jurisdiction over Defendants. The court therefore denies

17  Defendants' motion without prejudice to refiling following jurisdictional discovery for

18  the reasons stated below. *See infra* § III.E.

19  **C.    Venue**

20        The Defendants also move to dismiss this case for improper venue as specified in

21  28 U.S.C. § 1391. (Mot. at 3-4 (citing Fed. R. Civ. P. 12(b)(3).) The court denies this

22  motion. This case was originally filed in Washington State Superior Court for King

County. (*See* Compl.) Defendants then removed the complaint to this court. (*See* Not.

of Rem.) When a plaintiff brings an action in state court, which is removed by a

defendant, the requirements of the venue statute, 28 U.S.C. § 1391, do not apply. Rather,

28 U.S.C. § 1441(a) governs the venue of a removed action. *Polizzi v. Cowles*

*Magazines, Inc.*, 345 U.S. 663, 665-66 (1953); *see also Nw. Pipe Co. v. Thyssenkrupp*

*Steel USA, LLC*, No. C13-5342RBL, 2013 WL 3716677, at *2 (W.D. Wash. July 12,

2013) ("Section 1391 is inapplicable to determine whether venue is proper because this

case was removed, and the venue for a removed action is governed by 28 U.S.C.

§ 1441(a)."). Section 1441(a) of Title 28 provides that the proper venue of a removed

action is "the district court of the United States for the district and division embracing the

place where such action is pending." 28 U.S.C. § 1441(a). Thus, the Western District of

Washington is the proper venue.

**D.     Transfer**

Defendants also request that the court transfer this case to the Eastern District of

Louisiana "[f]or the convenience of the parties and witnesses, [and] in the interest of

justice." (Mot. at 4-5 (citing 28 U.S.C. § 1404(a)); *see also* Supp. Memo (Dkt. # 14) at

5-6.) A defendant seeking transfer "must make a strong showing of inconvenience to

warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth*

*Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In determining whether to transfer venue

pursuant to § 1404(a), the Ninth Circuit has articulated several factors the court should

consider, including: "(1) the location where the relevant agreements were negotiated and

executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's

choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The court also weighs relevant public policy considerations of the forum state. *Id.* at 499.

Defendants provide a one-paragraph conclusory and contradictory argument that transfer is appropriate, which is largely based on factors that also relate to personal jurisdiction. (*See* Mot. at 5 (requesting transfer because "Defendants have no contacts with the state of Washington" and Defendants' contacts with Washington do not give this court general jurisdiction over Defendants).) Without articulating its conclusions on the nine factors, the court finds that Defendants have not made the necessary "strong showing of inconvenience" to warrant transfer. *Decker*, 805 F.2d at 843; *see also Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, No. C 07-01519 WHA, 2007 WL 2900405, at *1 (N.D. Cal. Oct. 3, 2007) (concluding whether transfer was appropriate without expressly considering each factor). However, as explained below, *see infra* § III.E, because the court finds that further discovery is needed to resolve the question of personal jurisdiction, the court denies Defendants' motion to transfer without prejudice. Defendants may refile this motion, if appropriate, at the close of jurisdictional discovery.

**E.      Jurisdictional Discovery**

A district court has broad discretion to permit or deny discovery to determine whether it has in personam or subject matter jurisdiction. *See Laub v. U.S. Dep't of the*

*Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). When a party requests discovery to respond to a motion to dismiss on jurisdictional grounds, the court ordinarily should grant discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093 (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)) (discussing discovery in the context of standing). On the other hand, "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Laub*, 342 F.3d at 1093 (quoting *Wells Fargo*, 556 F.2d at 430 n.24).

"It is well-established that '[t]he burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." *Gager v. United States*, 149 F.3d 918, 922 (9th Cir. 1998) (quoting *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995)). However, a plaintiff seeking jurisdictional discovery need not "first make a prima facie showing that jurisdiction actually exists." *Hall v. United States*, No. 16-CV-02395-BAS-RBB, 2017 WL 3252240, at *4 (S.D. Cal. July 31, 2017) (quoting *NuboNau, Inc. v. NB Labs, Ltd.*, No. 10-cv-2631-LAB-BGS, 2011 WL 5237566, at *3 (S.D. Cal. Oct. 31, 2011)). "Such a showing is necessary to survive a motion to dismiss, and '[i]t would . . . be counter intuitive to require a plaintiff, *prior* to conducting discovery, to meet the same burden that would be required in order to defeat a motion to dismiss.'" *NuboNau, Inc.*, 2011 WL 5237566, at *3 (quoting *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001)).

For example, the court in *Orchid Biosciences* ordered jurisdictional discovery at the motion to dismiss stage after finding that the defendant's affidavits may not have revealed all of its contacts with the state. *See* 198 F.R.D. at 673-74. The court further explained that, because the defendant had numerous contacts with the forum—albeit insufficient for personal jurisdiction as pleaded—discovery may uncover additional information bearing on the jurisdictional inquiry. *Id.* at 674. Ultimately, the court held that the plaintiff "should be allowed explore the quality, quantity and nature of all of Defendant's contacts with this forum" to argue whether the defendant should be subject to personal jurisdiction in the court. *Id.*

In this case, it is undisputed that Defendants have contacts with the state of Washington. (*See* Resp. at 5, 7; Supp. Memo at 3-4 (Defendants admitting that they have a certified pitching coach in Washington).) Moreover, Defendants do not deny that they have an affiliate relationship with another baseball training facility in Kent, Washington, or that Mr. Pourciau has repeatedly traveled to Washington to provide clinics and conduct business in direct competition with Plaintiffs. (*See* Mot.; *see generally* Dkt.) Although these contacts alone do not provide general jurisdiction in Washington, discovery may reveal that Defendants' contacts in Washington are "of the sort that approximate physical presence." *See Bancroft*, 223 F.3d at 1086 (internal citations omitted).

Moreover, further discovery into the audience of Defendants' tweets may show that Defendants are subject to specific jurisdiction in this forum. As stated above, Plaintiffs did not provide enough information about the tweets to show that Defendants expressly aimed their conduct at Washington. Defendants directed their tweets at a

1 | number of individuals, but almost all of the recipients are unidentified. Further discovery

2 | into the identities of the tweets' audience should provide the court with the necessary

3 | facts to determine whether it has personal jurisdiction over Defendants.

4 |     In short, this is not a case where "it is clear that further discovery would not

5 | demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo*, 556 F.2d

6 | at 430 n.24. To the contrary, the court finds that "a more satisfactory showing of the

7 | facts is necessary" to determine whether the court has personal jurisdiction over

8 | Defendants, *Laub*, 342 F.3d at 1093, and that Plaintiffs have presented sufficient facts to

9 | establish that the evidence sought exists, *see Hall*, 2017 WL 3252240, at *4. The court

10 | therefore GRANTS Plaintiffs request for jurisdictional discovery.

11 |     The court has broad discretion to limit discovery otherwise permissible under the

12 | Federal Rules of Civil Procedure. On a motion or on its own, the court must limit the

13 | frequency or extent of discovery after considering a number of factors, including "the

14 | importance of the discovery in resolving the issues, and whether the burden or expense of

15 | the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1)-(2).

16 | "When a defendant raises jurisdictional objections, the court may stay discovery

17 | proceedings generally and limit discovery to matters relevant to the court's jurisdiction."

18 | *Orchid Biosciences*, 198 F.R.D. at 675 (citing 8 Charles A. Wright, Arthur R. Miller &

19 | Richard L. Marcus, *Federal Practice and Procedure* § 2040 (2d ed. 1994)). Courts have

20 | "routinely stayed discovery on the merits altogether while challenges to jurisdiction are

21 | pending." *Progressive N. Ins. Co. v. Fleetwood Enterprises, Inc.*, No. C04-1398MAT,

22 | 2005 WL 2671353, at *5 (W.D. Wash. Oct. 18, 2005) (citation omitted).

1   Accordingly, the court denies without prejudice Defendants' motion to dismiss to

2   allow Plaintiffs the opportunity to conduct jurisdictional discovery on the issues of

3   specific and general personal jurisdiction. The court specifically limits Plaintiffs to

4   requesting documents that relate to personal jurisdiction. The court concludes that

5   allowing discovery beyond jurisdictional issues at this juncture would place a burden on

6   Defendants that far exceeds any benefit Plaintiffs would derive.

7   The court grants Plaintiffs 90 days in which to conduct their jurisdictional

8   discovery. The parties must file any related discovery motions within 60 days of the

9   filing date of this order—30 days prior to the jurisdictional discovery cutoff. Although

10  the court is available to resolve intractable disputes, the court encourages the parties to

11  work cooperatively to implement this order and to expeditiously complete the discovery

12  authorized herein. If, however, discovery disputes arise that require court intervention,

13  the court requires the parties to utilize the procedures set forth in Local Rule LCR 7(i)

14  before resorting to formal motions practice. *See* Local Rules W.D. Wash. LCR 7(i).

15  After Plaintiffs have conducted jurisdictional discovery limited to the issue of personal

16  jurisdiction, Defendants may renew their motion to dismiss and motion to transfer if

17  appropriate.

18  //

19  //

20  //

21  //

22  //

# IV. CONCLUSION

For the reasons stated herein, the court DENIES Defendants' motion to dismiss based on improper venue (Dkt. # 8), DENIES without prejudice Defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer (Dkt. # 8), and GRANTS Plaintiffs' request for jurisdictional discovery (Dkt. # 17).

Dated this 27th day of September, 2018.

JAMES L. ROBART
United States District Judge