UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KYLE BODDY, et al.,<br><br>Plaintiffs,<br>v.<br><br>BRENT POURCIAU, et al.<br><br>Defendants. | CASE NO. C18-1046JLR<br><br>ORDER DENYING MOTION FOR LEAVE TO FILE A THIRD-PARTY COMPLAINT |

## I. INTRODUCTION

Before the court is Defendants Brent Pourciau and Top Velocity, LLC's ("Top Velocity") (collectively, "Defendants") motion for leave to file a third-party complaint against Aiden Ward. (Mot. (Dkt. # 28-1).) Plaintiffs Kyle Boddy and Driveline Baseball Enterprises, LLC ("Driveline") (collectively, "Plaintiffs") oppose the motion. (Resp. (Dkt. # 29).) The court has considered the motion, the parties' submissions concerning

//

//

ORDER - 1

the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Defendants' motion for leave to file a third-party complaint.

## II. BACKGROUND

This case involves allegations of libel, false light, and unfair competition. (*See generally* SAC (Dkt. # 10).) The court detailed this case's factual and procedural background in its prior order. (*See* Order (Dkt. # 19) at 2-7.) In this order, the court recounts only the salient facts and procedure.

**A.    Statements at Issue**

Mr. Ward is a baseball player who trained at Driveline. (Peterson Decl. (Dkt. # 30) ¶ 4, Ex. B ("Ward Aff.") at 1.) Mr. Ward attests that, in October 2017, he was following a Twitter debate between Plaintiffs and Mr. Pourciau. (*Id.*) Hoping to "rile up [Mr. Pourciau]," Mr. Ward fabricated a text message exchange between himself and Mr. Boddy and sent it to Mr. Pourciau in an anonymous private Twitter message. (*Id.*; *see also id.* Ex. A.) Mr. Ward fabricated the text messages to make it appear like Mr. Boddy was encouraging Mr. Ward to use performance enhancing drugs ("PEDs"). (Ward Aff. at 1; *see also* Ward Aff. at 1, Ex. A.) Mr. Ward told Mr. Pourciau that he was a former Driveline client and claimed that 45% of college athletes training with Driveline were using PEDs. (Ward Aff. at 1; Ex. A.) Mr. Ward believed that the messages made "outlandish and obviously false claims about Driveline and steroid use." (*Id.*) Mr. Ward

---

[1] Plaintiffs request oral argument on the motion (*see* Resp. at 1), but the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

further told Mr. Pourciau that he "can never distribute" the information that Mr. Ward anonymously provided. (*Id.*) Still concerned that Mr. Pourciau believed that the fabricated information was true, Mr. Ward reached out to Mr. Pourciau again to tell him that "it was all just a joke." (*Id.* at 1-2.)

Plaintiffs allege that, on or about November 8, 2017, Mr. Pourciau created a Twitter account entitled "Chris C" from which he publicly posted "there is a lot you guys don't know about [Driveline] that needs to be exposed." (SAC ¶¶ 11-12.) The post included a screenshot of the private messages between Mr. Ward and Mr. Pourciau as well as the fabricated text message exchange Mr. Ward provided to Mr. Pourciau. (*Id.*) Mr. Pourciau publicly reposted the Chris C tweet from his personal Twitter account later that night, adding his own comment. (*Id.* ¶ 14.) At the time, it was unknown that Mr. Pourciau controlled the Chris C account. (*Id.* ¶ 20.) On November 28, 2017, Mr. Pourciau again replied to the original Chris C tweet, providing a link to the private message screenshots and saying, "I am blown about by the sh[\*\*] that comes from DL. Coaches that blantanly [sic] lie about WB studies and recent rumor of PED." (*Id.* ¶ 14, Ex. B at 3.)

**B.    Lawsuit**

On November 9, 2017, one day after the initial tweet from the Chris C account, Plaintiffs filed a libel claim in King County Superior Court against John Does, intending to amend the complaint when they discovered who was responsible for the Chris C tweet. (*See id.* ¶ 20; Compl. (Dkt. # 8-1) at 4.) Plaintiffs then initiated an investigation into the source of the messages. (SAC ¶ 22.) The investigation revealed that Mr. Pourciau had

created the Chris C account. (*Id.* ¶¶ 23, 26.) Plaintiffs amended their complaint, identifying Mr. Pourciau and Top Velocity as defendants and adding a claim for unfair competition. (*Id.* ¶ 27; *see also* FAC (Dkt. # 1-1) ¶¶ 1, 4, 32-36.)[2]

Defendants—both Louisiana citizens—removed this matter to federal court. (*See* Not. of Rem. (Dkt. # 1) at 3.) Defendants then moved to dismiss or transfer this case claiming that, among other things, they did not purposefully avail themselves of the state of Washington such that a Washington court could exercise personal jurisdiction over them. (*See generally* MTD (Dkt. # 8).) The court denied the motion without prejudice and granted Plaintiffs 90 days to conduct jurisdictional discovery because the court lacked sufficient facts to determine if it had personal jurisdiction over Defendants. (*See generally* Order.) Neither party has challenged personal jurisdiction since the 90-day jurisdictional discovery period expired. (*See* Dkt.)

**C.     Aiden Ward**

After this litigation began, Driveline emailed several current and former trainees that it identified as potential witnesses, including Mr. Ward. (Peterson Decl. ¶ 2, Ex. A.) Upon receiving the email, Mr. Ward contacted Driveline. (Ward Aff. at 2). On October 12, 2018, Mr. Ward provided an affidavit attesting that he had contacted Mr. Pourciau anonymously from an old Twitter account to "rile up Brent [Pourciau] by sending him Twitter messages suggesting that [Mr. Ward] had knowledge of steroid use at Driveline." (*Id.* at 1.) Mr. Ward admitted to falsifying the text message conversation with Mr. Boddy

---

[2] Plaintiffs also added Chris Cretin, a former business associate of Mr. Pourcia, as a defendant. (*See* FAC) They later terminated him as a defendant. (*See* SAC at 1.)

and further admitted that the PED allegations were false. (*Id.* at 1-2.) Plaintiffs disclosed this affidavit to Defendants on October 12, 2018. (Resp. at 2 (citing Peterson Decl. ¶ 4).)

**D.     Present Motion**

On March 15, 2019, Defendants filed the present motion, requesting leave to file a third-party complaint against Mr. Ward. (*See* Mot.; *see also* Prop. Third-Party Compl. (Dkt. # 28-2).) The third-party complaint alleges negligence, negligent misrepresentation, and fraud claims against Mr. Ward. (Prop. Third-Party Compl. ¶¶ 13-32.) In short, Defendants assert that, if they are liable to Plaintiffs for their tweets that purportedly amplified Mr. Ward's messages, then Mr. Ward is in turn liable to Defendants for "the amount of damages and costs awarded to the Plaintiffs." (*Id.* ¶ 12; *see also generally id.*)

## III.     ANALYSIS

**A.     Rule 14(a) Standard**

Under Federal Rule of Civil Procedure 14(a), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). For a third-party complaint to be proper under Rule 14(a), the third-party's liability to the original dependent must be "dependent on the outcome of the [plaintiff's] main claim and [be] secondary or derivative thereto." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). The distinction between "dependent on" and "secondary or derivative thereto" the plaintiff's claim is not altogether clear, but courts agree that "[t]he crucial characteristic of a Rule 14 claim is that [a] defendant is attempting to transfer to the

third-party defendant the liability asserted against him by the original plaintiff." *See id.* at 200 (quoting Charles Alan Wright et al., 6 *Federal Practice & Procedure* § 1446 at 257 (1971 ed.)). In other words, "Rule 14(a) is limited to claims in which the third-party plaintiff 'can show that if he is found liable to the plaintiff then the third-party defendant will be liable to him.'" *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 121 (E.D.N.Y. 2005); *see also United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751-52 (5th Cir. 1967) ("Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim."). For example, Rule 14(a) may allow a claim against a third-party defendant for indemnity, subrogation, or contribution. *See* Charles Alan Wright et al., 6 *Federal Practice and Procedure* § 1446 at 416-21 (3d ed. 2010).

However, even when a defendant's proposed third-party complaint is proper under Rule 14(a), the court may exercise its discretion to deny the impleader if the third-party action would "disadvantage" the existing action. *See Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986); *Jorgensen Forge Corp. v. Associated Indem. Corp.*, No. C14-1524JCC, 2015 WL 12030118, at *2 (W.D. Wash. Apr. 21, 2015). In exercising its discretion, the court consi ders a number of factors, including: (1) timeliness of the motion for leave to file the third-party complaint, (2) complication of the issues, (3) likelihood of a trial delay; and (4) prejudice to the original plaintiff. *See Jorgensen Forge Corp.*, 2015 WL 12030118 at *2. "The decision of whether to implead a third-party under Rule 14 is within the sound discretion of the trial court." *Stewart*, 845

//

F.2d at 199 (citing *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983)).

**B.      The Third-Party Complaint Is Not Proper Under Rule 14(a)**

Defendants contend that their claims against Mr. Ward depend on Plaintiffs' underlying case because Mr. Ward is "inextricably linked factually to this proceeding." (Mot. at 3; *see also* Reply (Dkt. # 31) at 3.)  Further, according to Defendants, "[i]f the Plaintiffs' main claims against Defendants fail then the third-party claims will also fail" because "[b]ut for the actions of [Mr.] Ward, Plaintiffs would have no claims against Defendants."  (Reply at 3.)  But "[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough" to establish that it is proper under Rule 14(a).  *Stewart*, 845 F. 2d at 200; *see also Joe Grasso & Son, Inc.*, 380 F.2d at 751-52 (denying a third-party claim "even though it does arise out of the same general set of facts as the main claim"); *Uldricks v. Kapaa 382, LLC*, No. 07-00117JMS/KSC, 2007 WL 2694409, at *3-5 (D. Haw. Sept. 11, 2007) ("The fact that the claims asserted in the Complaint and Third-Party Complaint are, as [the defendant] characterizes them, 'inextricably intertwined,' does not satisfy the standard for third-party practice under Rule 14.").  Moreover, to sustain a third-party action, the third-party defendant's alleged conduct must be more than merely a but-for cause of the plaintiff's harm.  *See McSherry v. Capital One FSB*, 236 F.R.D. 516, 522 (W.D. Wash. 2006) (denying a third-party complaint as improper although the third party allegedly incurred the debt that the plaintiff accused the defendant of publishing and misattributing to the plaintiff).

In addition, a claim against a third-party defendant that is, in fact, a complete defense to the original action is not a proper third-party action under Rule 14(a). *See Parr*, 484 F.2d at 769 ("[T]his would seem to be a complete defense to the original action and would not seem to be the basis of a third-party action."); *Korzyk*, 2005 WL 1378758, at \*3 n.2 ("When a third party's conduct furnishes a complete defense against the defendant's liability, the defendant may raise that conduct defensively in his answer, but may not use it as a foundation for impleader."). That is because, if the complete defense prevails, then the original defendant is not liable on the plaintiff's underlying claim. But, as explained, a third-party action under Rule 14(a) "presupposes liability on the part of the original defendant which he is attempting to pass on to the third-party defendant." *Parr*, 484 F.2d at 769. Courts have similarly denied as improper third-party claims that relied on the same conduct as the defendant's affirmative defense. *See Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 266 (S.D.N.Y. 2000) (denying third-party complaint because "the contribution claim here is based on the precise conduct that supports an affirmative defense of comparative negligence"); *Uldricks*, 2007 WL 2694409, at \*3-5 (denying third-party complaint where third-party claims were "based on the precise conduct that supports an affirmative defense to liability").

The court concludes that Defendants' third-party claims do not depend on or derive from Plaintiffs' claims. *See Stewart*, 845 F.2d at 199. In fact, Defendants' fraud and negligent misrepresentation claims against Mr. Ward contradict Plaintiffs' claims against Defendants: On the one hand, Plaintiffs allege that Defendants knew or recklessly disregarded that Mr. Ward's PED allegations about Plaintiffs were false. (*See*

SAC ¶ 34 ("Defendants published or caused to be published the Comments either with the knowledge that they were false, or with conscious disregard for the truth"); *id.* ¶ 39 ("Defendants knew or were in reckless disregard as to the falsehood of the statements"); *id.* ¶ 42 (alleging that Defendants have engaged in unfair competition through its "libel campaign").) On the other hand, Defendants assert that they did not know that Mr. Ward's statements were false and that they reasonably relied on his statements. (*See* Prop. Third-Party Compl. ¶ 22 ("[Defendants'] reliance on the false information was reasonable"); *id.* ¶ 29 ("[Defendants] were unaware of the falsity of [Mr.] Ward's representations"); *id.* ¶ 31 ("Due to the nature of [Mr.] Ward's statements, [Defendants] had a right to rely upon them").) It cannot be true that Defendants simultaneously knew that Mr. Ward's statements were false (as alleged by Plaintiffs) and were unaware of the falsity of Mr. Ward's statements (as alleged by Defendants). Likewise, it cannot be true that Defendants simultaneously recklessly disregarded the falsity of Mr. Ward's statements (as alleged by Plaintiffs) and reasonably relied on Mr. Ward's representations (as alleged by Defendants). Defendants' fraud and negligent misrepresentation claims against Mr. Ward are therefore improper under Rule 14(a).

Although Defendants' negligence claim against Mr. Ward does not contradict Plaintiffs' complaint, the claim is not proper under Rule 14(a). (*See* Prop. Third-Party Compl. ¶ 16 ("[Mr.] Ward's actions . . . were within the scope of known risks such that Ward should have known such communication would[] 'add fuel to the fire of the ongoing Twitter debate.'").) First, Defendants' negligence claim appears to be an affirmative defense, not a third-party claim. In fact, Defendants' seventh affirmative

defense against Plaintiffs explicitly relies on Mr. Ward's negligence. (*See* Answer at 7 ("[T]he acts and alleged injuries, if any, were proximately caused by or contributed to by the negligent acts or omissions of Aiden Ward[,] over whom these Defendants had no control.").) Second, Defendants' third-party negligence claim can only succeed if a reasonable person in Mr. Ward's circumstances should have known that Defendants would knowingly or recklessly publish the defamatory statements. (*See* Prop. Third-Party Compl. ¶ 16.); *see also Bodin v. City of Stanwood*, 927 P.2d 240, 246 (Wash. 1996) (adopting the reasonable person standard from Restatement (Second) of Torts § 283)). In cases similar to the present one, courts have found that a defendant's knowing or reckless conduct precludes the defendant from obtaining indemnification from a third-party. *See In re Street*, 283 B.R. 775, 781 (Bankr. D. Ariz. 2002) (finding that the fraud claim against the defendant precluded the defendant's third-party claim of malpractice because "[i]f [the plaintiff] successfully makes that showing, he will have demonstrated sufficient culpability by [the defendant] to preclude her obtaining indemnification from [the third party]"); *see also McSherry*, 236 F.R.D. at 524 (denying a third-party complaint in a defamation and invasion of privacy case because the third party's action did not "actively lead" the defendants to fail to investigate the truth or falsity of the statements at issue). Thus, Defendants' negligence claim against Mr. Ward is not a proper third-party action.

*Laughlin v. Dell Financial Services*, 465 F. Supp. 2d 563, 566-67 (D.S.C. 2006), is instructive. In *Laughlin*, the plaintiff brought a defamation claim against a computer financing company, DFS, alleging that it falsely reported to a credit agency that the plaintiff was delinquent on an account. *Id.* at 565. The plaintiff claimed that DFS

negligently failed to respond to the plaintiff's assertion that the information was inaccurate. *Id.* DFS sought to implead the plaintiff's son under Rule 14(a) for opening the delinquent account with the plaintiff's social security number. *Id.* The court rejected the third-party complaint because the third-party fraud claim against the son did not depend on or derive from the original plaintiff's defamation claim against DFS. *Id.* at 566.

> DFS's potential liability to Plaintiff is not the proximate and foreseeable result of [the son's] fraud. Instead, this liability will result, if at all, from DFS's own conduct in negligently failing to investigate Plaintiff's claim and/or in publishing false credit information after knowing or recklessly disregarding that such information was false. If, by reason of the intervening bad acts of [the son], DFS was not negligent in investigating and/or reasonably published the information in the credit report, then DFS has a defense to Plaintiff's claims. However, if DFS did act with the requisite intent and/or recklessness, then [the son's] acts did not *cause* DFS to behave tortiously toward Plaintiff. As such, because the damages DFS may have to pay to Plaintiff are not the proximate, foreseeable result of [son's] conduct, DFS may not recover this amount as damages in its suit against [the son].

*Id.*

Similarly, Defendants potential liability to Plaintiffs is not the product of Mr. Ward's alleged negligence, negligent misrepresentation, or fraud. Rather, Defendants liability will result from their own conduct: publishing false content about Plaintiffs with knowledge of the falsity or with reckless disregard for the truth. (*See* SAC ¶¶ 34, 39, 42). If, because of Mr. Ward's actions, Defendants did not know the statements were false or did not recklessly disregard their falsity, then Defendants are not liable to Plaintiffs. However, if Defendants did act with the requisite intent and/or recklessness, then Mr.

//

Ward's actions did not cause Defendants to behave tortiously toward Plaintiffs. Thus, the third-party action is not proper. *See Laughlin*, 465 F. Supp. 2d at 566.

In sum, the court concludes that Defendants' claims against Mr. Ward do not depend on or derive from Plaintiffs' underlying claims and accordingly are not proper under Rule 14(a). The court therefore DENIES Defendants' motion for leave to file a third-party complaint.

**C. Discretionary Factors**

Because the court has determined that Defendants' proposed third-party complaint is improper, the court does not need to reach the discretionary factors. *See Jorgensen Forge Corp.*, 2015 WL 12030118 at *2. However, the court briefly discusses one factor to underscore the impropriety of Defendants' third-party complaint.

Impleading Mr. Ward would unnecessarily complicate this case. *See Sw. Adm'rs, Inc.*, 791 F.2d at 777; *Jorgensen Forge Corp.*, 2015 WL 12030118, at *2 (declining third-party complaint because "[g]ranting [the] motion would greatly increase the complexity and cost of this litigation"). Adding Mr. Ward, a resident of Massachusetts (*see* Ward Aff. at 1), may bring in unrelated and complex issues, such as personal jurisdiction and choice of law, which weigh against allowing the third-party complaint. *See Plywood Panels, Inc. v. M/V Thalia*, 141 F.R.D. 689, 692 (E.D. La. 1992) (denying a motion for leave to add a third-party complaint when no *prima facie* basis existed for personal jurisdiction over most third-party defendants and even if such a basis existed, adding the defendant would result in prejudice and delay); *Blais Const. Co., Inc. v. Hanover Square Assocs.-I*, 733 F. Supp. 149, 156-57 (N.D.N.Y. 1990) (denying

third-party complaint when "[a]t a minimum, the addition of . . . a third-party defendant w[ould] add complicated federal legal issues and choice of law questions to what appears to be a fairly straightforward state law contract action").

Defendants argue that personal jurisdiction will not unduly complicate the case because the court already addressed this issue and Plaintiffs' arguments for why the court has personal jurisdiction over Defendants apply equally to Mr. Ward. (Reply at 2-3; *see also* Order.) However, in the court's order addressing personal jurisdiction, the court rejected the exact arguments that Defendants now claim establish personal jurisdiction over Mr. Ward. (*See* Order at 8 n.3 (explaining that Mr. Pourciau's trip to Washington and affiliate relationship with a Washington baseball training facility did not establish general personal jurisdiction), 11-12 (explaining that tweets published from an out-of-state computer that were "randomly or fortuitously" viewed in Washington did not alone establish specific personal jurisdiction).) The court explained that its personal jurisdiction analysis for Defendants depended on whether "the tweets' audience, combined with other case-related facts, reveals that Defendants expressly aimed their tweets at Washington." (*Id.* at 14.) The court therefore granted jurisdictional discovery because it could not make that finding "without knowing the residence of Defendants' targeted audience, or the central location of Plaintiffs' reputation." (*Id.* at 15.)

Mr. Ward, unlike Defendants, sent a private message to Defendants (Ward Aff. at 1), who were in Louisiana, not Washington (Answer ¶ 3). Neither Plaintiffs' prior arguments nor the court's prior reasoning establish that the court has personal jurisdiction

//

over Mr. Ward. Adding Mr. Ward as a third-party plaintiff, therefore, would likely require the court to address new complicated personal jurisdiction issues.

In addition, allowing this third-party action would raise choice of law questions. Plaintiffs brought this case under Washington law. (*See, e.g.*, SAC ¶ 42 (relying on RCW 1[9].86.023); *id.* at 14 (relying on RCW 19.86.090).) Mr. Ward is a resident of Massachusetts. (Ward Aff. at 1.) He sent the disputed private messages to Defendants, who are citizens of Louisiana. Defendants then allegedly chose to publicize these messages, causing the alleged harm to Plaintiffs, who are citizens of Washington. It is not clear what law will govern Defendants' third-party claims against Mr. Ward.

Accordingly, despite Defendants' contentions, the court finds that there would be no benefits of "judicial efficiency" in litigating Plaintiffs' claims alongside the third-party claims. (*See* Reply at 4.) Rather, there is a real risk that including all the claims in the same suit—with potential different state laws and discordant *mens rea* instructions— would confuse the jury. *See Johns Hopkins Univ v. Hutton*, 40 F.R.D. at 338, 347 (D. Md. 1966) (denying proposed third-party complaint because it "would create such a complex of claims and issues that a jury would have great difficulty in understanding and keeping in mind the several claims and the distinctions between them.").

In short, even if the third-party complaint were proper under Rule 14(a), the court would exercise its discretion to reject the complaint because it unnecessarily complicates the case. *See Sw. Adm'rs, Inc.*, 791 F.2d at 777; *Jorgensen Forge Corp.*, 2015 WL 12030118, at *2.

//

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion for leave to file a third-party complaint (Dkt. # 28).

Dated this 3rd day of May, 2019.

*[signature]*

JAMES L. ROBART
United States District Judge